# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAYLE MILES, | |
| Plaintiff, | CIVIL ACTION NO. 3:08-CV-1220 |
| v. | (JUDGE CAPUTO) |
| NORTH PENN LEGAL SERVICES, INC., | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment of Defendant North Penn Legal Services, Inc. (Doc. 21.) Because genuine disputes of material fact remain, Defendant's motion will be denied. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## **BACKGROUND**

### I.   **Factual Background**

Plaintiff Gayle Miles ("Miles") was employed by North Penn Legal Services, Inc. ("North Penn") as Fiscal Manager. (Miles Dep. 11:14-22, Aug. 28, 2009.) Defendant North Penn is a non-profit corporation who provides legal services. (Victoria Coyle Dep. 7:12-8:2, Aug. 27, 2009.) North Penn was formed in January 2001 after the merger of Legal Services of Northeastern Pennsylvania, Susquehanna Legal Services, Northern Legal Services, and Lehigh Valley Legal Services, and as part of the merger the four former directors became a management council. (David Tilove Dep. 6:17-25, Dec. 22, 2009.) Because the board of directors of North Penn felt this management council was ineffective, Victoria Coyle ("Coyle")

was hired as executive Director of North Penn. (Coyle Dep. 6:23-24, 9:16-10:6.) Coyle was the youngest of the six candidates considered for the position of Executive Director. (Coyle 13:18-14:13.) After the four entities merged the fiscal department of North Penn consisted of Joe Dalkner, Marlene Pell, and Miles.[1] (Miles Dep. 84:25-85:4; John Bogdanovicz Dep. 47:12-22, Dec. 10, 2009.) Miles had been employed as the Fiscal Manager for Legal Services of Northeastern Pennsylvania, Inc. from 1986 until the merger. (Miles Dep. 11:14-22.) Each of the others had also formerly worked for one of the other merged entities. (Bogdanovicz Dep. 47:12-22.)

### A. Miles' Work Performance

Miles was pleasant when Coyle first arrived, but she was reluctant to changes implemented as a result of the merger. (Coyle Dep. 28:16-20.) Miles demonstrated reluctance when performing timekeeping and budgeting tasks because she divided them by the four former entities, rather than treating North Penn as a unified entity. (Coyle Dep. 57:1-11.) There was, however, divisiveness among North Penn personnel in all departments after the merger. (Miles 69:14-25.) Miles was the agent of change to the four former regional offices, which caused resistance to new procedures on behalf of the merged entity. (Miles 69:14-25.) Miles was also involved in an incident keeping the fiscal department's fridge and microwave separate from the employee break room, after being instructed to integrate with the others. (Bogdanovicz Dep. 73:1-75:3.)

---

[1] North Penn's fiscal department also included Connie Holdren, but she resigned prior to Miles's termination and non-selection at issue in this litigation. (Miles Dep. 85:1-3; Coyle Dep. 106:2-107:12).

2

Miles had some strengths, but could be a "very difficult person to work with." (Coyle Dep. 26:1-2.) Coyle felt Miles's communication style was "very confusing." (Coyle Dep. 28:24-25.) Coyle was also concerned that Miles did not have all of the financial information organized in one place for easy access. (Coyle Dep. 61:10-19.) Miles does not recall Coyle ever communicating that she was dissatisfied with the reports Miles created. (Miles Dep. 86:19-25.) Coyle also believed Miles did not demonstrate effective leadership. (Coyle Dep. 37:23-38:3.) Miles was responsible for the fiscal department, but she had no direct supervisory control over the other fiscal staff. (Coyle Dep. 30:6-23.) Coyle stated that even without Miles having direct authority over the department, she could have resolved conflicts by reporting them supervisors, even if that would have made Miles's role difficult. (Coyle Dep. 65:12-66:10.)

B. Miles' Interaction with Co-Workers

Miles was considered disruptive and "nasty" by some North Penn employees. (Coyle Dep. 40:13-15.) "With [Miles] in charge, there was nothing but conflict." (Coyle Dep. 29:23-24.) She used a "very demeaning tone" on the telephone. (Coyle Dep. 66:19-20.) Miles believed her tone and language when communicating with other employees was appropriate. (Miles Dep. 48:15-20, 49:5-17.) Miles would send back employee expense reports with minor mathematical errors without informing them what the error was or simply correcting the error. (Coyle Dep. 67:10-68:2.) After communicating this concern to Miles, however, Coyle believed it was probably corrected. (Coyle Dep. 69:4-14.) Despite being friends before the merger, when working together in a single department Miles and Ms. Pell did not get along well. (Miles Dep. 68:4-69:3.) Coyle did not usually attempt to determine who bore responsibility for the disagreements between Ms. Pell and Miles. (Coyle Dep. 34:8-11.)

3

Coyle also heard complaints from Danna Rich-Collins, Betsy Grbenick, Sheila Fisher, Kelly Carrubba, and Bill McLaughlin. (Coyle Dep. 41:5-12.) "[T]hree out of four people at some point had expressed some sort of displeasure about [Miles] specifically." (Bogdanovicz Dep. 68: 23-25.)[2]

### C. Creation of the Chief Financial Officer Position

To resolve conflicts within the fiscal department, Coyle determined that the department needed to be restructured with a more established hierarchy. (Coyle Dep. 36:7-19.) Coyle determined that a Chief Financial Officer ("CFO") should be created, and that this person should modify the structure of the department. (Coyle Dep. 75:15-18.) Coyle determined that two of the three employees of the fiscal department, Miles and Mr. Dalkner, should be terminated. (Coyle Dep. 105:16-19.) Ultimately after the reorganization the fiscal department still contained three positions. (Coyle Dep. 106:2-107:12.) Miles told Coyle she would apply for the CFO position, to which Coyle responded "you can apply for it, but you probably won't get it." (Miles Dep. 88:15-20.) Miles then applied for the CFO position. (Coyle Dep. 90:24-91:3.)

Miles was one of the final three candidates for the CFO position, but was ultimately not selected. (Coyle Dep. 91:16-92:3, 104:23-25; Rejection Letter to Miles, Doc. 25, Ex. M.) Coyle did not observe the standard North Penn interview process because it was "very cumbersome, but this policy was not revised at any point after she became executive director. (Coyle Dep. 89:4-90:15.) North Penn's handbook provided that for administrative

---

[2] North Penn presents further evidence of Miles's conflicts with others in the workplace, but for purposes of the present motion it is sufficient to acknowledge that there is evidence in support of North Penn's position that Miles disrupted the work environment.

4

staff, unlike for advocacy and support positions, the hiring panel should not include persons from the office where the vacancy existed. (North Penn Staff Handbook 8-9, Doc. 25, Ex. J.) Despite the existence of this policy, Coyle placed Ms. Pell on the interview committee. (Coyle Dep. 88:7-17.) Coyle was aware of Miles's disputes with Ms. Pell when placing her on the committee. (Coyle 35:17-25, 40:22-25, 102:18-104:1.) This was the only hiring committee that Ms. Pell ever served on during her years working for North Penn and its predecessor. (Marlene Pell Dep. 64:9-19, Dec. 10, 2009.)

At the time of the termination and non-selection, Miles was fifty-five (55) years old. (Compl. ¶ 11, Answer ¶ 11.) The candidate selected, Korie Traver, was thirty (30) years old. (Korie Traver Dep. 7:21-22, Aug. 27, 2009.) Miles believed there was a pattern at North Penn of terminating or demoting older employees in favor of younger ones. (Miles Dep. 98:20-99:15.) North Penn stated in a letter to the Pennsylvania Human Relations Commission ("PHRC") that the selection of Ms. Traver was due to Traver's greater experience. (Letter to PHRC, Doc. 25, Ex. O.) Ms. Traver had less than five (5) years of experience, but was a certified public accountant (CPA). (Coyle Dep. 83:13-16; Traver Dep. 10:19-21.) Miles had a masters of business (MBA) and had worked for North Penn or its predecessor for eighteen (18) years. (Miles Dep. 7:18-19, 19:3-7.)

## II.     **Procedural Background**

Miles filed a complaint in the United States District Court for the Middle District of Pennsylvania on June 27, 2008. (Doc. 1.) North Penn filed a motion for summary judgment on February 1, 2010. (Doc. 21.) This motion has been fully briefed by both parties, and is now ripe for disposition.

**STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. Id. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Miles brings four claims alleging that she was terminated (Counts I and III) and not selected as CFO (Counts II and IV) as a result of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). 29 U.S.C. § 621, *et seq* (ADEA); 43 P.S. § 951, *et seq* (PHRA). The ADEA and the PHRA[3] prohibit age discrimination in employment against individuals over age forty (40). 29 U.S.C. § 623(a)(1). A plaintiff may establish an age discrimination in employment claim using direct or indirect evidence. *Seibel v. Marketplace Direct, Inc.*, No. 2:05-cv-684, 2007 WL 788384, at *1 (W.D. Pa. Mar. 13, 2007). A direct evidence case of age discrimination in employment exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie*

---

[3]The same legal standard applies to claims under the PHRA and the ADEA. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005). As such, the Court's analysis is co-extensive.

case to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989)). The instant matter is not a case involving direct evidence of discriminatory animus.

Where there is no direct evidence of age discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden-shifting framework set forth in *McDonnell Douglas* first requires the plaintiff to establish his prima facie case, which, if successful, raises an inference of age discrimination. *Keller v. Ortix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Weldon*, 896 F.2d at 797. Plaintiff may establish his prima facie case by showing: (1) membership in a protected group, i.e. at least forty (40) years of age; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). The parties do not dispute that Miles has presented sufficient evidence establishing a *prima facie* case. (Bf. in Support 10, Doc. 22 (discussing only legitimate non-discriminatory justification and pretext); Bf. in Opp'n 5, Doc. 27.)

An adequate, non-discriminatory reason for the adverse action taken against the plaintiff serves to "dispel[] the inference of discrimination arising from [p]laintiff's initial evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, the defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, the defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse

8

employment action. *Id.* Plaintiff then bears the burden of demonstrating that the alleged legitimate, non-discriminatory reasons advanced by the defendant are a pretext aimed at concealing the defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257). If, however, the defendant fails to satisfy this minimal burden of production, the Court must deny Defendant's motion in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

To survive a summary judgment motion, a plaintiff must then present "some evidence, direct or circumstantial, from which a fact finder could reasonably either: (1) disbelieve [the defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [the defendant's] action." *Fuentes*, 32 F.3d at 764. If the plaintiff successfully points to evidence sufficient to discredit Defendant's tendered reasons, the plaintiff need not submit additional evidence beyond the initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). "[A]n employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant . . . evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002).

This Court must now consider whether North Penn has presented legitimate non-discriminatory justifications for the termination and non-selection of Miles, and whether Miles has presented evidence of pretext to rebut these justifications. Because North Penn presents different justifications for each action, each action will be considered in turn.

9

**I.      Termination (Counts I and III)**

Miles first argues that she was terminated from her position at North Penn as a result of age discrimination.    As a legitimate non-discriminatory reason for firing Plaintiff, Defendant submitted evidence that: 1) the elimination of Miles's position was a necessary step in reorganizing the fiscal department; 2) Miles's reluctance to change and her poor work quality resulted in her termination; and 3) Miles's disruptive behavior resulted in her termination. As stated above, North Penn need only provide sufficient evidence, if true, that would permit the conclusion of a non-discriminatory motive. *Fuentes*, 32 F.3d at 763. North Penn presents evidence as to the need for reorganization (Coyle Dep. 36;7-19), Miles's work quality (*see supra* Background I.A.), and that Miles caused disruptions with other co-workers (*see supra* Background I.B.)  I find that North Penn has sufficiently articulated non-discriminatory justifications,  shifting the burden back to Miles to establish pretext.

Examining the record before this Court in the light most favorable to the Plaintiff, Miles presents sufficient evidence to demonstrate that genuine questions of material fact remain as to whether North Penn's justifications are pretext for age discrimination. As stated above, Miles need only to discredit North Penn's stated justifications to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d at 495.  With respect to the necessity of reorganizing the department, Miles presents evidence that the same number of employees and a similar structure existed both before and after the reorganization. (Coyle Dep. 106:2-107:12.) This creates a genuine dispute of fact as to the necessity, and possibly even the existence, of any reorganization occurring within the department. Miles similarly demonstrates disputes of fact as to the extent of any work performance or co-worker interaction issues. (Miles Dep.15-20,

10

49:5-17; Coyle Dep. 34:8-11.) Miles also presents evidence demonstrating that she was not formally disciplined, and that any unwanted behaviors were corrected. (Miles Dep. 86:19-25.) I find that Miles has presented sufficient evidence from which a reasonable fact finder could disbelieve North Penn's stated justifications for her termination. Because genuine disputes of material fact remain, I will deny North Penn's motion as to Miles's claims at Counts I and III.

## II.     Non-Selection (Counts II and IV)

Miles also argues that she was not selected for North Penn's CFO position as a result of age discrimination. North Penn asserts that Miles was not selected for the CFO position for three reasons: 1) the candidate selected, Ms. Traver, was better qualified; 2) Miles's work history demonstrated she would not be effective as CFO; and 3) Miles's history of disruptive behavior with co-workers. As stated above, North Penn need only provide sufficient evidence, if true, that would permit the conclusion of a non-discriminatory motive. *Fuentes*, 32 F.3d at 763. North Penn presents evidence as to the greater qualifications of Ms. Traver (Coyle Dep. 83:13-16; Traver Dep. 10:19-21), Miles's leadership qualities (Coyle Dep. 37:23-38:3), and that Miles caused disruptions with other co-workers (*see supra* Background I.B.). I find that North Penn has sufficiently articulated non-discriminatory justifications, shifting the burden back to Miles to establish pretext.

Again examining the record before this Court in the light most favorable to the Plaintiff, Miles presents sufficient evidence to demonstrate that genuine questions of material fact remain as to whether North Penn's justifications are pretext for age discrimination. First, genuine disputes of material facts remain over whether Traver was more qualified than Miles for the CFO position. (Miles Dep. 7:18-19, 19:3-7.) Second, Miles presents evidence that

11

Coyle had pre-determined that Miles would not be CFO before the interview process began. Coyle stated to Miles "you can apply for it, but you probably won't get it." (Miles Dep. 88:15-20.) Coyle also did not follow the standard interview process (Coyle Dep. 89:4-90:15), and that Coyle placed on the selection committee Ms. Pell. (Coyle Dep. 88:7-17.) This was done after Coyle knew that Miles and Ms. Pell had a history of disputes. (Coyle 35:17-25, 40:22-25, 102:18-104:1.) In the light most favorable to Miles, this evidence of pre-determination could indicate an ulterior motive such as age discrimination. Third, as stated above, there are material disputes of fact as to the extent of any disruptions between Miles and her co-workers. Additionally, there are issues of fact as to Miles's leadership experience over whether she had an opportunity to illustrate authority as fiscal manager. (Coyle Dep. 30:6-23.) Finally, Miles also presents evidence that the justifications relating to her workplace performance are merely a pretext created after the fact, as North Penn only reported to the PHRC that Ms. Traver was selected based upon experience. (Letter to PHRC, Doc. 25, Ex. O.) I find that Miles has presented sufficient evidence from which a reasonable fact finder could disbelieve North Penn's stated justifications for her non-selection for the CFO position. Because genuine disputes of material fact remain, I will deny North Penn's motion as to Miles's claims at Counts II and IV.

## CONCLUSION

After reviewing the evidence presented in the light most favorable to Miles, the non-moving party, I find that there are material disputes of fact as to whether North Penn's asserted non-discriminatory justifications are merely pretext for age discrimination.

12

Therefore, North Penn's Motion for Summary Judgment will be denied.

An appropriate Order follows.

| | |
|---|---|
|  March 30, 2010  |  /s/ A. Richard Caputo  |
| Date | A. Richard Caputo<br>United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GAYLE MILES, | |
| Plaintiff, | CIVIL ACTION NO. 3:08-CV-1220 |
| v. | (JUDGE CAPUTO) |
| NORTH PENN LEGAL SERVICES, INC., | |
| Defendant. | |

## **ORDER**

**NOW**, this  30th  day of March, 2010, **IT IS HEREBY ORDERED THAT** Defendant North Penn Legal Services, Inc.'s Motion for Summary Judgment (Doc. 21) is **DENIED**.

                                                               /s/ A. Richard Caputo  
                                                             A. Richard Caputo  
                                                             United States District Judge